## LIGHTFOOT, ET AL. v. STRAHAN.

1. An agreement by the vendee of slaves to return them, and pay such sum of money on demand as is equivalent to their depreciation, forms a sufficient consideration for the rescission of the same.

2. Where upon an agreement to rescind a sale, it was incumbent on the vendee to do the first act in order to consummate the rescission, if he has omitted to do any thing, he cannot resist the payment of the purchase money by setting up the agreement.

3. An appeal bond, conditioned that the appellants shall prosecute their appeal with effect, and if they "fail therein, then pay the judgment with such damages and costs as shall be adjudged against them in said Court," substantially conforms to the statute.

Writ of error to the Circuit Court of Chambers.

This was, originally, twenty-three cases commenced before a justice of the peace by the defendants in error, against two of the plaintiffs, with whom their co-plaintiffs became associated as sureties in appeal bonds. These cases were consolidated by the Circuit Court, and a declaration filed on all the notes. The cause was submitted to a jury, as the record recites on issue joined, but what was the plea does not appear. A verdict was returned for the plaintiffs, for the amount of the notes and interest, and a judgment thereon rendered against the defendants below, and their sureties.

On the trial the defendants excepted to the ruling of the Court. From the bill of exceptions, it appears, that the plaintiff below having introduced the notes, evidence was then adduced by the defendants, tending to show that the notes were given for a family of negroes, warranted to be sound, and that one of them was unsound. Further, that a short time after the purchase of the negroes, the parties agreed to rescind the contract, and the defendant to pay the plaintiff the amount they had depreciated in value, to be determined by arbitration. The evidence in respect to the agreement to rescind, left it doubtful, whether it was induced by the unsound-

Lightfoot, et al. v. Strahan.

ness, or for reasons independent of the soundness or title of the slaves. No evidence was adduced to show, that the defendant had returned, or offered to return the negroes, but the proof tended to show, that at the time the rescission was agreed on, it was also stipulated that the defendant should call and get the slaves.

The Court charged the jury, that if the agreement to rescind was founded upon the unsoundness of, or want of title to the slaves, then "they should consider the same in favor of the defendant; but if the agreement to rescind was disconnected with, and independent of the title or soundness of said slaves, that they could not take the same into consideration."

Heydenfelt, for the plaintiff in error. The motives which induced the parties to rescind the contract cannot be considered in determining whether it should be enforced. It was put an end to by the agreement so to consider it, and each party was remitted to the condition originally occupied by him. In addition, it is contended that the appeal bond has not such a condition as the statute requires, and no judgment could have been rendered against the sureties. [Quinn, et al. v. Adair, 4 Ala. Rep. 315.]

P. Phillips, for the defendant. The charge to the jury was clearly correct. It merely declares that if the agreement to rescind was without consideration, it was not binding. As to the appeal bond it does not come within the case cited, but its condition substantially conforms to the statute.

COLLIER, C. J.—It is laid down generally, that all executory contracts may be rescinded by the parties to them, if they continue interested until the agreement to rescind is made. [Johnson v. Reed, 9 Mass. Rep. 78.] And an executory contract in writing, not under seal, may before breach, be discharged and abandoned, by a subsequent unwritten agreement, although the original agreement to be binding, is required by the statute of frauds to be in writing. [Buel v. Miller, 4 N. Hamp. Rep. 196.] So where two contracts have been entered into in relation to the same subject matter, the last will control or rescind the first, (as the case may be) though there

be no such contract expressed therein. [Reed v. McGraw, 5 Ohio Rep. 380.]

It has been held that where a sale is made of goods, which are delivered, and an agreement is afterwards made to rescind the contract, the rescission is not complete until a re-delivery has taken place. [Miller v. Smith, 1 Mason's Rep. 437. See also Quincy v. Tilton, 5 Greenl. 277.] When contracts are rescinded, the parties should be restored to their former rights, and placed in the same situation in which they stood previous to the agreement. [Conner v. Henderson, 15 Mass. Rep. 319; Griffith v. Fred. Co. Bank, 6 G. & John. Rep. 424; Chapman v. Shaw, 3 Greenl. Rep. 59; Wilt v. Ogden, 13 Johns. Rep. 56.]

Having stated these principles as guides to conduct us to a proper conclusion, we proceed to consider the case stated in the bill of exceptions. The charge to the jury, supposes, that a consideration, other than the undertaking of the defendant to deliver the slaves to the plaintiff, and to pay him the amount they had depreciated in value, was necessary, in order to impart validity to the agreement to rescind. In this it is clear, from several of the citations made, that the Court misapprehended the law. Surely the return of the slaves, or the agreement to return them, and pay such sum of money on demand, as was equivalent to their depreciation, formed a sufficient consideration to abrogate the contract of sale.

Let us inquire whether the rescission has been consummated, so as to authorize the defendant to set it up in bar to an action on the note; for unless this has been done, the defendant in error has not been prejudiced, and although the charge be illegal, the judgment of the Circuit Court cannot for that cause be reversed. Assuming that the plaintiff was to call for the slaves, until this was done, the defendant could not be put in default: it was enough if they were delivered on demand. Thus far the plaintiff was willing to trust the defendant, and he himself the first to act. But no time, appears to have been designated when the amount the slaves depreciated in value, should be ascertained or paid, or who should take the first step towards the contemplated arbitration. As this was part of the agreement which was to be perfected to relieve the defendant from the payment of the purchase money, as stipulated by his notes,

he of course, should, in a reasonable time after the terms of the rescission were agreed, have given the plaintiff notice of his readiness to arbitrate, and submitted some definite proposition leading thereto. And after the amount to be paid was thus ascertained, he should in a reasonable time have paid, or offered to pay it to the plaintiff. All this was necessary to have entitled the defendant to the benefit of a rescission, and the only reason, if any, why a return of the slaves was not incumbent on the defendant, was because the plaintiff had agreed to call for them himself. This conclusion, seems to us to result from several of the authorities cited, and to be a consequence of the principle, which requires parties rescinding a contract, to be placed in *statu quo*, except so far as they have agreed to dispense with an observance of this rule.

It follows from what we have said, that the error in the charge to the jury, has worked no injury to the defendant, and he cannot derive a benefit from it, here.

The condition prescribed by the statute, where a party appeals from the judgment of a justice of the peace, is, that the appellant shall prosecute his appeal with effect, and if cast in the suit, pay and satisfy the condemnation of the Court. [Clay's Dig. 314, § 9.] The condition of the bonds in the case before us, is that the appellants shall prosecute their appeal with effect, and if they "fail therein, then pay the judgment with such damages and costs as shall be adjudged against them in said Court." There is no substantial variance between the statutory condition, and that which has been adopted; and consequently the bond is such a one, as the Court might summarily render judgment on, against the sureties.

The consequence is, that the judgment of the Circuit Court is affirmed.